UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES W. FOWLER COMPANY,<br><br>     Plaintiff,<br><br> v.<br><br>IRONSHORE SPECIALTY<br>INSURANCE COMPANY,<br><br>     Defendant. | CASE NO. 18-1133MJP<br><br>ORDER DENYING MOTION TO<br>TRANSFER VENUE |

THIS MATTER comes before the Court on Defendant's Motion to Transfer Venue to the District of North Dakota. (Dkt. No. 14.) Having reviewed the Motion, the Response (Dkt. No. 17), the Reply (Dkt. No. 21) and the related record, the Court DENIES the Motion to Transfer Venue.

**Background**

This action involves interpretation of a builders risk insurance policy (the "policy") issued by Defendant Ironshore Specialty Insurance Company ("Ironshore") to Plaintiff James W. Fowler Company ("Fowler"). Fowler is a general contractor incorporated in Oregon. Ironshore

is an insurance company incorporated in Arizona. The policy was issued in connection with a pipeline installation project in North Dakota. In 2017, as construction was underway, the insured project—an underwater tunnel intended to accommodate a pipeline—was deformed by "unexpected earth movement," resulting in complete loss. Fowler and Ironshore now dispute the amount of payment due under the insurance policy and, in particular, the applicability and interpretation of a policy endorsement that purports to limit certain costs.

Fowler filed this suit in the Western District of Washington. Ironshore now moves to transfer venue to the District of North Dakota.

## Discussion

"For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964). A motion to transfer is within the district court's discretion, and is subject to an "individualized, case-by-case consideration of convenience and fairness." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000).

In determining whether to grant such a motion, the Ninth Circuit instructs district courts to consider factors including "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling

nonparty witnesses. Id. at 498-499. Other relevant factors include court congestion and conservation of judicial resources, local interest in deciding local controversies, and burdening citizens in an unrelated forum with jury duty. See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

Here, the Court finds that each of these factors favor having this case heard in the Western District of Washington.

First, while the insured project is located in the District of North Dakota, the policy was negotiated and procured in Seattle, Washington. This factor favors Fowler.

Second, while the parties dispute whether Washington or North Dakota law applies, the Court need not decide at this stage. "Federal courts are equally equipped to apply distant state laws when the law is not complex or unsettled," T-Mobile USA, Inc. v. Selective Ins. Co. of Am., Case No. C15-1739JLR, 2016 WL 1464468, at *4 (W.D. Wash. Apr. 14, 2016) (citations omitted), and neither Fowler nor Ironshore claim that the law to be applied to this dispute is complex or unsettled. This factor favors Fowler.

Third, a plaintiff's choice of forum generally is accorded great weight in the transfer analysis, Sec. Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985), particularly when the plaintiff resides in or the case has a significant connection to the chosen district. See T-Mobile, 2016 WL 1464468, at *4-5; see also Nordquist v. Blackham, Case No. C06-5433FDB, 2006 WL 2597931, at *3 (W.D. Wash. Sept. 11, 2006). Here, while neither company is incorporated or has its principal place of business in Washington or North Dakota, both companies conduct business in Washington, Fowler maintains an office in Washington, and the policy in dispute was negotiated and procured in Washington. The case is sufficiently

connected to this district, such that Fowler's "choice of forum should [not] be disturbed." Vigman, 764 F.2d at 1317.

The fourth and fifth factors consider "the respective parties' contacts with the forum" and "the contacts relating to the plaintiff's cause of action in the chosen forum" respectively. Jones, 211 F.3d at 498. As explained supra, both Fowler and Ironshore do business in Washington, and the policy was negotiated and procured in Washington. While the insured project is located in North Dakota, neither the fact of loss nor the existence of coverage are in dispute, and Ironshore has not identified any specific witnesses or evidence located in North Dakota. These factors favor Fowler.

The sixth factor, the "differences in the costs of litigation in the two forums," "focuses primarily on the venue's proximity to witnesses." T-Mobile, 2016 WL 1464468, at *6. Again, as explained supra, Ironshore has not identified any specific witnesses located in North Dakota. Further, Ironshore has not explained why, as a multinational insurance company headquartered in Arizona, it will face increased costs to litigate in Washington. This factor favors Fowler.

The seventh factor, the availability of compulsory process to compel attendance of unwilling non-party witnesses focuses not on "the number of witnesses . . . at each locale," but rather on "the materiality and importance of the anticipated . . . witnesses' testimony." Lueck v. Sunstrand Corp., 236 F.3d 1137, 1146 (9th Cir. 2001). Ironshore has not explained how any witnesses in North Dakota could offer material testimony as to the contents of the policy or the applicability of its endorsements. This factor favors Fowler.

Finally, the Court notes that the District of North Dakota currently has only one sitting judge, the Honorable Chief Judge Daniel L. Hovland, and 2018 Federal Court Management Statistics indicate that transferring venue is likely to result in slower case resolution. See U.S.

Courts Federal Court Management Statistics, September 2018 (Sept. 30, 2018), www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2018.pdf. While Ironshore claims that Judge Hovland has "substantive knowledge" of the tunneling project which will "aid the Court in addressing the matter expeditiously" (Dkt. No. 14 at 8; Dkt. No. 21 at 6), the fact that Judge Hovland signed off on a settlement agreement in an earlier, unrelated lawsuit involving the insured project is unlikely to increase judicial economy or efficiency.

Because Ironshore has failed to meet its burden to show that transferring this case to North Dakota would be more convenient or would further the interests of justice, the Court DENIES the Motion. The case shall proceed in the Western District of Washington.

The clerk is ordered to provide copies of this order to all counsel.

Dated January 22, 2019.

Marsha J. Pechman
United States District Judge